IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| SHELBY INSURANCE COMPANY, | ) | C.A. No. 4:04-22502-TLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **WRITTEN OPINION AND ORDER** |
| | ) | |
| BOAD, INC. D/B/A CHARLOTTE WATERPROOFING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

As the record reflects, the defendant Boad Incorporated d/b/a Charlotte Waterproofing ("Boad") is a named defendant in a state court action entitled <u>The Ocean Bay Cub, HPR v. Drake Development, LLC et al.</u>, C/A No. 05-CP-36-716 ("state court action").[1] That suit alleges, in part, that a general contractor and numerous subcontractors, including Boad, negligently constructed a condominium building in Myrtle Beach which resulted in excessive water damage to the building. At all times relevant thereto, Boad was insured by a commercial general liability insurance policy ("the policy") issued by Shelby Insurance Company ("Shelby").

Subsequent to the filing of the state court action, Shelby filed the instant declaratory judgment action in this Federal Court ("Federal Court action") seeking a declaration that it has no duty to defend Boad in the underlying state court action and that no insurance coverage exists for the alleged damages under the policy. This matter now comes before the undersigned upon the filing of

---

[1] It is undisputed that this action remains pending in state court.

1

the defendant's motion to dismiss for lack of jurisdiction.[2] The plaintiff opposes this motion.

In its motion to dismiss, the defendant asserts that this case should be dismissed because: (i) there is already pending a state court action which could determine the defendant's liability; and (ii) the factors set forth in <u>Nautilus Ins. Co. v. Winchester Homes, Inc.</u>, 15 F.3d 371 (4th Cir. 1994) weigh in favor of this Court declining jurisdiction in this case. In response thereto, the plaintiff argues that the defendant's motion to dismiss should be denied because: (i) it has been granted a statutory right to have its rights and legal relationships determined in Federal Court; and (ii) analysis of the <u>Nautilus</u> factors weigh in favor of this Court exercising jurisdiction.

Title 28 U.S.C. § 2201 affords district courts the discretionary authority to grant declaratory relief in cases where doing so: (i) will serve a useful purpose in clarifying and settling the legal relations at issue; and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. <u>Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.</u>, 139 F.3d 419, 422 (4th Cir. 1998).

The United States Supreme Court has emphasized that the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants," and that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

---

[2]Presumably, the instant motion is being brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, not Rule 12(d)(1) as cited by the defendant in his memorandum in support thereof.

Nevertheless, the court may not decline jurisdiction "out of whim or personal disinclination, but may only do so for good reason." Nautilus Ins. Co.,15 F.3d at 375.

When a related state proceeding is underway, as in the present case, the United States Supreme Court has also explained that a federal district court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court." Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 1176 (1942). This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding. Id.; *See also* Mitcheson v. Harris, 955 F.2d 235 (4th Cir. 1992).

Significantly, the Fourth Circuit Court of Appeals has a long history of reluctance when it comes to exercising jurisdiction over declaratory judgment actions involving the indemnification of parties to state court actions. American Motorists Ins. Co. v. Commonwealth Medical Liability Ins. Co., 306 F. Supp.2d 576 (E.D. Va. 2004).

For example, in Indem. Ins. Co. v. Schriefer, 142 F.2d 851 (4th Cir. 1944), the Fourth Circuit Court of Appeals affirmed dismissal of an action filed by an automobile insurance company against its insured seeking a declaration that the insurance company had no liability under its policy. In so holding, the Fourth Circuit reasoned that:

> ...[t]here could be no possible justification for dragging into federal court the litigation of issues pending in the state court, for the sake of obtaining a declaratory judgment as to a matter which will have no practical significance if the defendants prevail in the state court, and which the company can litigate as well after the termination of the state court litigation as now, if the defendants do not prevail.
>
> Id. at 852.

3

Almost fifty years later, in Mitcheson v. Harris, 955 F.2d 235 (4th Cir. 1992), the Fourth Circuit Court of Appeals again reached a similar conclusion, but this time reversed the district court's decision to exercise jurisdiction over a declaratory judgment action brought by a liability insurance company. The Fourth Circuit explained that:

> Absent a strong countervailing federal interest, the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law.

Id. at 239.

Numerous other decisions in the Fourth Circuit have also held that declining jurisdiction over a liability insurer's declaratory judgment action seeking a determination of its obligations under a policy is not an abuse of discretion. American Motorists, 306 F. Supp.2d at 581(citing Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 258 (4th Cir. 1996); Continental Casualty Co. v. Fuscardo, 35 F.3d 963, 966 (4th Cir. 1994); and Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

In determining whether to proceed with a federal declaratory judgment action when a parallel state action is pending, the Fourth Circuit Court of Appeals recently identified several factors that need be considered:

> (i) whether the state has a strong interest in having the issues decided in its courts;
>
> (ii) whether the state courts could resolve the issues more efficiently than the Federal Courts;
>
> (iii) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and Federal Courts; and
>
> (iv) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

4

> Penn-America Ins. Co. v. Coffey, 368 F.3d 409 (4th Cir. 2004) (citing United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir. 1998) and quoting Nautilus Ins., 15 F.3d at 377) (the "Nautilus factors").

A balance of these factors should determine whether the court exercises its discretion to hear a declaratory action. Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d at 424. Though there is no requirement that a parallel state-court proceeding be pending before a federal court may decline jurisdiction, the existence of a pending state-court action is an important consideration. Id. at 423.

As noted above, the first Nautilus factor to be considered in determining whether to decline jurisdiction in this case is the State of South Carolina's interest in having the issues decided in state court. As Mitcheson made clear:

> There exists an interest in having the most authoritative voice speak on the meaning of applicable state law, and that voice belongs to the state courts when state law controls the resolution of the case.

Mitcheson, 955 F.2d at 237.

As the record reflects, all of the issues of insurance coverage raised here are governed by the substantive law of the State of South Carolina. While a federal court may apply state law to resolve a dispute, when all questions in the declaratory action depend solely upon state law, the state interest in deciding the issues is "particularly strong." Id. at 239.

Additionally, the defendant asserts that the issues presented in this action are novel, difficult, and problematic. Specifically, the defendant argues that:

> The issues of the extent of coverage available to general contractors and to subcontractors under South Carolina law is currently unsettled and is of major significance to the construction industry in South Carolina.

(Def. Memo. p. 3).

The undersigned agrees.

In particular, the issue of what can be considered an "occurrence" under commercial general liability policies remains unsettled under South Carolina state law. Significantly, the term "occurrence" is used in the insurance agreement between the parties in this case and a determination of what constitutes an "occurrence" will be an important factor in resolving the dispute now before this Court.

Notably, in L-J, Inc. v. Bituminous Fire and Marine Ins. Co., 2004 WL 1775571 (S.C. Sup. Ct. Aug. 9, 2004) an insured and three commercial general liability insurers recently brought a declaratory judgment action against a fourth insurer for indemnification and contribution for all defense costs and settlement payments resulting from the alleged faulty road construction by the insured which caused water damage to a roadway. The South Carolina Circuit Court Special Master Ordered the insurer to indemnify the insured and awarded other insurers a proportionate contribution from the insurer and the insurer appealed. The South Carolina Court of Appeals affirmed and certiorari was granted. On appeal, the South Carolina Supreme Court held that the premature water damage to the road, occurring as a result of a contractor's faulty workmanship, was not caused by an "occurrence." On February 3, 2005, a request for rehearing of this decision was granted by the South Carolina Supreme Court and remains pending. Importantly, this Court is now presented with a similar factual scenario (i.e., alleged faulty construction and water damage) and will be required to determine whether an "occurrence" has taken place as that term is defined under unsettled state law and the applicable liability policy provisions in this case. Thus, it may well be best to allow the South Carolina state courts to first reach a decision about the parameters of the term "occurrence," before a decision can be made which addresses the issues presented in this case. Once the term "occurrence" is defined by the South Carolina state courts, the definition then becomes relevant to

what factual scenarios may fall within that definition.

The undersigned notes that the issue of what is an "occurrence" under a commercial general liability insurance policy was a question in a recent Fourth Circuit opinion. In <u>Columbia Casualty Co. v. Westfield Ins. Co.</u>, 2005 WL 1713154 (4th Cir. July 25, 2005) the Fourth Circuit Court of Appeals certified the following question to the Supreme Court of Appeals of West Virginia:

> Under West Virginia, were the suicidal deaths... "occurrences" within the meaning of the Westfield Insurance Company commercial general liability policy at issue in this case?

The state court answered the certified question "Yes" and that opinion was adopted by the Fourth Circuit Court of Appeals. While not controlling of the issues presented in this case, <u>Columbia Casualty</u> supports the conclusion that when the issue of what is an "occurrence" is unsettled, under state law, the issue is best resolved by the state courts.

Consequently, the issues currently presented before this Court do not appear to involve the routine application of settled principles of law to particular disputed facts. Instead, this federal action appears to require the application of facts involving a complicated, multi-defendant, construction case to unsettled issues of state insurance law. As such, the interests of the South Carolina state courts in deciding these issues are "particularly strong" and weigh against the exercise of federal jurisdiction by this Court. Again, as explained by the Fourth Circuit Court of Appeals in <u>Mitcheson</u>:

> ...the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law.

<u>Id</u>. at 239.

The second <u>Nautilus</u> factor to be considered is judicial efficiency. As noted above, the issues presented in the instant declaratory judgment action involve purely issues of state law, some of

which are unsettled, and are related to those raised in the pending state court action. Both the state and federal court actions stem from the same set of operative facts. Similarly, this Court concludes that the plaintiff could raise the instant issues in either the pending state lawsuit or a separate state court proceeding.

>As held in Mitcheson:
>
>In deciding whether to entertain a declaratory judgment action, a federal court should analyze whether its resolution of the declaratory action will settle all aspects of the legal controversy. This court has long recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to "try a controversy by piecemeal, or to try particular issues without settling the entire controversy." Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937); accord 10A Charles A. Wright et al., supra, § 2759. For the federal court to charge headlong into the middle of a controversy already the subject of state court litigation risks "[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation." Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942).
>
>It hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed simultaneously on parallel tracks. The inefficiencies that could result are not hard to imagine. For example, if a federal court were to render a declaration that the insurer had no duty to defend, the ongoing state litigation could be delayed considerably due to time consuming substitution of counsel. Similarly, a federal declaration that an insurer had no duty to indemnify could be rendered totally unnecessary by a subsequent state verdict for the insured in the underlying state action. *See* Indemnity Ins. Co. v. Schriefer, 142 F.2d 851, 853 (4th Cir. 1944) (approving dismissal of declaratory action because duty to indemnify could be decided as well after the state court litigation). Such potential problems reinforce the inherent appeal of having all litigation stemming from a single controversy resolved in a single court system. *See generally* Gibbs, 383 U.S. at 724-25, 86 S.Ct. at 1138. While inefficiencies can of course occur within a single court system, the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof.
>
>Mitcheson, 955 F.2d at 240.

Based upon the undersigned's careful consideration of all relevant factors in this case, the Court also concludes that "it [would be] more efficient to resolve all litigation stemming from a single controversy in a single court system." American Motorists, 306 F. Supp.2d at 582 (citing Mitcheson, 955 F.2d at 239). Because the state court action was filed first and has been pending for quite some time, it certainly would be more efficient for the state court to resolve all litigation arising from the construction of the condominium project at issue. As a result, judicial efficiency also weighs against the exercise of federal jurisdiction in this case. The South Carolina state court is the only forum with the jurisdictional power to resolve all facets of this controversy, and it is in the best position to assess how best to handle any satellite suits. Similarly, the question of judicial efficiency also is related to the next Nautilus factor, "unnecessary entanglement" between the federal and state courts.

The third Nautilus factor to be addressed is the unnecessary entanglement between the federal and state courts, due to overlapping issues of fact or law. As previously noted, the issues presented in the instant declaratory judgment action involve purely issues of state law, some of which are unsettled, and are related to those raised in the pending state court action. Both cases arise out of the same core of operative facts. In each case, both the state and federal courts will be required to apply the facts as determined to the law of the case. This application could result in the "unnecessary entanglement" between the state and federal courts. For example, as properly argued by the defendant:

> The issues that determine the duty to defend and coverage under the policy are inherently fact related. There will be a question for a jury as to whether water entered through Boad's work or through the work of the general contractor or the various subcontractors and suppliers on the project. In addition, there are claims that the architect failed to properly perform its services. It will be necessary for a jury to sort

9

through the damages being claimed by the homeowners to determine what the cause of any water entry may have been and the extent of any ensuing damage.

(Def. p. 4).

Furthermore, a review of the plaintiff's complaint in the instant declaratory judgment action reveals that the relief requested by Shelby is based upon the resolution of several factual questions which will need to be addressed by both the state and federal courts. Until these factual disputes are resolved, it will be difficult to resolve the duty to defend and coverage questions.

In particular, both the state and federal court actions will require a determination of the actual cause(s) of any water entry to the construction project and the extent of any ensuing damage. As noted, both cases will further require a determination by both courts of whether an "occurrence" had in fact happened under both unsettled state law and the general liability policy at issue. Thus, it is entirely possible that these alleged factual resolutions could be decided differently by both the state and federal courts. In this regard, the Fourth Circuit Court of Appeals noted in Mitcheson, that:

> In many declaratory actions brought to resolve a duty to defend or indemnify an insured in a controversy already the subject of state court litigation, there will be overlapping issues of fact or law between the state and federal actions... [Under such circumstances,] [t]he insured may well be collaterally estopped from relitigating the overlapping issues decided in the federal action. *See* Zurich Ins. Co. v. Alvarez, 669 F.Supp. 307, 309 (C.D.Cal.1987); Allstate Ins. Co. v. Harris, 445 F.Supp. 847, 851 (N.D.Cal.1978); Restatement (Second) of Judgments § 87 cmt. a (1982). Such issue preclusion will likely "frustrate the orderly progress" of state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution. Phoenix Ins. Co. v. Harby Marina, Inc., 294 F.Supp. 663, 664 (N.D.Fla.1969). Additionally, the state court will likely have to consult federal law to ascertain the preclusive principles at work, *see* Harnett v. Billman, 800 F.2d 1308, 1312-13 (4th Cir. 1986), thereby creating further entanglement...it is ultimately for [state] courts to decide both whether questions of [state] law should be entertained in a declaratory action instead of being reserved for the primary litigation and, if such a declaratory action is heard, whether it should be resolved before the primary suit. A system of judicial federalism has enough inherent friction without the added aggravation of unnecessary federal declarations on

questions such as those at issue here.

Mitcheson, 955 F.2d at 240-241.

Additionally, the plaintiff raises questions in its memorandum in opposition to the defendant's motion to dismiss relating to the insurance contract "exclusions" which may apply in this case. In particular, the plaintiff argues that the issues presented in this federal court action:

> ...center on enforcement of contractual language and do not overlap the underlying lawsuit...This suit focuses on certain exclusions listed in the commercial general liability policy between Boad and Shelby.

(Plaintiff's Brief p. 4).

However, the plaintiff does not specifically state how the "exclusions" in the general liability policy would deny Boad coverage.

This Court has reviewed the policy provisions set forth in the complaint. The exclusions included in the policy are set forth in the complaint. Some of the alleged relevant language pertaining to "Exclusions" is as follows:

> [This insurance does not apply to] [T]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations...

(Complaint p. 3).

Likewise, there is additional language under the "Exclusions" section in the complaint that reads as follows:

> 1. Damage to your Work
>
> Property damage to your work arising out of it or any part of it and included in the products–completed operation hazard.
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

11

(Complaint p. 4).

In the instant case, this Court <u>may</u> be able to analyze the factual issues and apply the exclusion language to the relevant facts. However, the cited "exclusions" language makes reference to "subcontractors" who are not a party to the federal declaratory judgment action. To attempt to apply the exclusion section to deny coverage in a declaratory judgment action, without the subcontractors joined as parties, would be extremely difficult to undertake. As well, once factual development is undertaken by the state court, it would be in the best position to determine if the exclusions apply in this case.

In its memorandum, Shelby further argues that "the pending state action involves separate and independent questions of state and contract law." This Court is simply unable to readily accept that the issues in the federal declaratory judgment action can be resolved "separate and independent" from those in the underlying state court case. Again, it is simply best to allow the state court to sort out the factual questions at issue and then determine their relationship to the coverage and exclusion questions. The absence of relevant parties and the unresolved factual determinations would make it extremely difficult for this Court to reach a determination of the parties' rights in this declaratory judgment action. While "a federal court should normally entertain a declaratory judgment action within its jurisdiction," <u>Nautilus</u>, <u>supra</u>, this Court concludes it would not be prudent to do so in this case for the reasons stated.

In summary, because it is possible that the trier of fact in both the state court case and the federal case may reach differing factual conclusions and since legal questions would be difficult to resolve without additional litigants to the federal declaratory judgment action, the possibility of "unnecessary entanglement" also weighs heavily against the exercise of federal jurisdiction.

Finally, the fourth <u>Nautilus</u> factor is whether the federal action is being used merely as a device for "procedural fencing." This Court finds no basis to conclude that the plaintiff is using the federal action as a device for "procedural fencing." Therefore, this factor neither weighs in favor of nor against the exercise of federal jurisdiction.

In conclusion, the plaintiff argues that "the issues before this Court center on enforcement of contractual language and do not overlap the underlying lawsuit...the pending state action involves separate and independent questions of state tort and contract law." (Plaintiff's Memo. p. 4-5). This Court is unable to accept this position. The factual questions presented in the state court action are substantially intertwined with a resolution of the insurance coverage questions presented in the federal declaratory judgment action. Thus, as noted, while "a federal district court should normally entertain a declaratory judgment action within its jurisdiction," it is not prudent to do so when factual questions require resolution before legal rights and obligations under an insurance contract can be decided. <u>Nautilus</u>, 15 F.3d at 375. This is especially true when factual disputes in the federal declaratory judgment action would need to be resolved without the benefit of all parties to the state court action.

For the reasons set forth herein, the undersigned concludes that jurisdiction in this case should not be exercised. Therefore, the defendants' motion to dismiss is **GRANTED**. The plaintiff is free to pursue this legal action in state court, should it choose to do so.

**IT IS SO ORDERED.**

(signature on separate page)

          <u>s/ Terry L. Wooten</u>
          Terry L. Wooten
          United States District Court Judge

August 4, 2005
Florence, South Carolina

14